Ryan C. Morris (SBN 19019)
WORKMAN NYDEGGER
60 East South Temple
Salt Lake City, UT 84111
Telephone: 801 533 9800
Facsimile: 801 328 1707
rmorris@wnlaw.com

Rollin Ransom (*pro hac vice* to be filed)
James Joseph Cappell (*pro hac vice* to be filed)
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213 896 6000
Facsimile: 213 896 6600
rransom@sidley.com
jamie.cappell@sidley.com

*Attorneys for Plaintiffs*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION, ATLANTIC RECORDS GROUP LLC, BAD BOY RECORDS LLC, BIG BEAT RECORDS INC., ELEKTRA ENTERTAINMENT GROUP INC., ELEKTRA ENTERTAINMENT LLC, RHINO ENTERTAINMENT LLC, WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS INC., UNICHAPPELL MUSIC INC., W CHAPPELL MUSIC CORP., WARNER CHAPPELL MUSIC, INC., and WARNER-TAMERLANE PUBLISHING CORP., <br><br> Plaintiffs, <br><br> vs. <br><br> CRUMBL, LLC, a Utah Limited Liability Company, and DOES 1 through 10, inclusive, <br><br> Defendants. | **COMPLAINT FOR:** <br><br> 1. **DIRECT COPYRIGHT INFRINGEMENT** <br><br> 2. **CONTRIBUTORY COPYRIGHT INFRINGEMENT** <br><br> 3. **VICARIOUS COPYRIGHT INFRINGEMENT** <br><br> **JURY DEMANDED** <br><br> Case No: 2:25-cv-316 |

Plaintiffs Atlantic Recording Corporation, Atlantic Records Group LLC, Bad Boy Records LLC, Big Beat Records Inc., Elektra Entertainment Group Inc., Elektra Entertainment LLC, Rhino Entertainment LLC, Warner Music International Services Limited, Warner Records Inc., Unichappell Music Inc., W Chappell Music Corp., Warner Chappell Music, Inc., and Warner-Tamerlane Publishing Corp. (individually, a "Plaintiff," and collectively, "Plaintiffs"), by and through their attorneys, allege as follows:

## **NATURE OF THE ACTION**

1.      All Plaintiffs are related subsidiaries of Warner Music Group Corp. ("WMG"), one of the world's largest music entertainment companies. Plaintiffs produce, manufacture, distribute, sell, and license some of the most iconic and popular sound recordings and musical compositions of all time, as well as many of today's biggest hits.

2.      Plaintiffs' sound recordings and musical compositions are protected by copyright law, which grants the copyright owner the exclusive right to, among other things, reproduce, distribute, and create derivative works of copyrighted works, to publicly perform musical compositions, and to publicly perform sound recordings by means of a digital audio transmission. An important portion of Plaintiffs'—and their artists' and songwriters'—revenue from sound recordings and musical compositions comes from licensing those sound recordings and musical compositions to others, who use Plaintiffs' musical works in videos, films, television shows, commercials, video games, and on social media.

3.      Defendant Crumbl, LLC ("Crumbl," and together with Does 1-10, "Defendants") is a highly successful gourmet cookie business, with over one-thousand owned or franchised stores nationwide. Crumbl has achieved its success by infringing Plaintiffs' copyrighted sound

recordings and musical compositions on a massive scale in promotional content posted on social media platforms.

4. Crumbl has largely eschewed traditional advertising, relying instead upon promotion of Crumbl's products and brand through social media sites, most notably on TikTok and Instagram. Crumbl produces and posts videos to its social media accounts promoting its brand and products. Additionally, Crumbl expands its marketing reach by partnering with "influencers"—individuals with large social media followings who create videos promoting Defendants' products or brand and then provide those videos to Defendants, who in turn post them on Defendants' social media pages.[1] These videos (each, a "Crumbl Video," and collectively, the "Crumbl Videos") are integral to Crumbl's promotional, marketing, and branding strategy. Critically, the Crumbl Videos frequently feature unauthorized use of Plaintiffs' sound recordings and musical compositions—usually featuring chart-topping and award-winning artists—as a principal and indispensable element of the Crumbl Videos; indeed, there is typically no speaking or sound other than the music integrated into the video.

5. While the Crumbl Videos have been instrumental to Defendants' success, Defendants have not paid for the privilege to use the sound recordings and musical compositions that are featured in them. Furthermore, Crumbl is a sophisticated, successful company with

---

[1] Crumbl's social media advertising is similar to that of Vital Pharmaceuticals, Inc. d/b/a "Bang Energy," an energy drink and sports nutrition supplement company that recently was found liable for copyright infringement in two different lawsuits due to the same type of copyright infringement alleged herein. *See UMG Recs., Inc. v. Vital Pharms., Inc.*, No. 21-CV-60914-CIV, 2022 WL 2670339 (S.D. Fla. July 11, 2022); *Sony Music Entm't v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858 (S.D. Fla. Sept. 14, 2022).

access to resources and a familiarity with intellectual property law, having enforced its own intellectual property rights.

6.      Yet, as to Plaintiffs alone, Defendants have misappropriated at least 159 of the most popular and valuable sound recordings and musical compositions in the market, using those creative works to build Defendants' brand profile and drive massive sales to Defendants without any compensation to Plaintiffs. These works include sound recordings or musical compositions performed by some of the world's best-selling artists and songwriters, including Dua Lipa, Bruno Mars, Lizzo, Taylor Swift, Mariah Carey, Ariana Grande, and Beyoncé (together with the other musical works listed on **Schedule A** attached, the "Plaintiffs' Musical Works"). Defendants not only failed to pay for the use of the Plaintiffs' Musical Works, but by including these works in their promotional materials without Plaintiffs' consent, Defendants deprived Plaintiffs, their recording artists, and their songwriters of the ability to control how and where their musical works are used.

7.      Defendants' conduct has caused Plaintiffs substantial and irreparable harm. Plaintiffs bring this action to obtain redress for Defendants' infringement of Plaintiffs' valuable rights and to prevent further violations of those rights.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), insofar as this action arises under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a), in that Crumbl resides in the District of Utah pursuant to 28 U.S.C. § 1391(c).

10.    This Court has personal jurisdiction over Defendants because Crumbl is a limited liability company with its principal place of business in Utah, or, alternatively, because Defendants have been doing business continuously in and maintain a regular presence in this state and this District, a substantial part of the wrongful acts occurred within this state and this District, and the effects of Defendants' unlawful conduct are directed toward and felt in this state and this District.

## THE PARTIES
### Plaintiffs

11.    Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

12.    Plaintiff Atlantic Records Group LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

13.    Plaintiff Bad Boy Records LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

14.    Plaintiff Big Beat Records Inc. is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

15.    Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

16.    Plaintiff Elektra Entertainment LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

17.    Plaintiff Rhino Entertainment LLC is a Delaware limited liability company with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

18. Plaintiff Warner Music International Services Limited is a limited company organized and existing under the laws of England and Wales, with its principal place of business at 27 Wrights Lane, London, England.

19. Plaintiff Warner Records Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

20. Plaintiff Unichappell Music Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

21. Plaintiff W Chappell Music Corp. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

22. Plaintiff Warner Chappell Music, Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

23. Plaintiff Warner-Tamerlane Publishing Corp. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

**<u>Defendants</u>**

24. Defendant Crumbl, LLC is a Utah limited liability company with its principal place of business at 2570 W 600 N, Suite 200, Lindon, Utah 84042.

25. Upon information and belief, Defendants Does 1 through 10 are subsidiaries, affiliates, agents, franchisees or representatives of Crumbl, and/or are otherwise responsible for and proximately caused and are causing the harm and damages alleged in this Complaint. Plaintiffs presently are unaware of the true names and/or the involvement of the Defendants sued herein by the fictitious designations Does 1 through 10, and for that reason, sue them by those designations. Plaintiffs will seek leave to amend this Complaint to identify Does 1 through 10

when their true names and involvement in the infringements and other wrongful conduct

hereinafter described are known.

## <u>GENERAL ALLEGATIONS</u>
### <u>Plaintiffs and Their Copyrighted Works</u>

26.    Plaintiffs Atlantic Recording Corporation, Atlantic Records Group LLC, Bad Boy

Records LLC, Big Beat Records Inc., Elektra Entertainment Group Inc., Elektra Entertainment

LLC, Rhino Entertainment LLC, Warner Music International Services Limited, and Warner

Records Inc. are engaged in the business of producing, marketing, promoting, distributing,

selling, and/or licensing sound recordings to third parties for various kinds of uses, including for

commercial uses in posts on social media platforms.

27.    Plaintiffs Unichappell Music Inc., W Chappell Music Corp., Warner Chappell

Music, Inc., and Warner-Tamerlane Publishing Corp. are engaged in the business of developing,

promoting, publishing, acquiring, administering, and/or licensing musical compositions,

including for commercial uses in posts on social media platforms.

28.    Plaintiffs invest substantial money, time, effort, and creative talent in discovering

and developing recording artists and songwriters; in creating, advertising, promoting, selling, and

licensing sound recordings embodying the performances of their exclusive recording artists; and

in developing, publishing, administering, and licensing their repertoire of musical compositions.

Plaintiffs' sound recordings and musical compositions are protected by copyright law.

29.    Furthermore, many recording artists and songwriters do not permit their musical

works to be used in social media advertising or are extremely selective about such uses.

Accordingly, a license for the use of Plaintiffs' Musical Works for advertising or promotional

purposes can be extremely valuable, since Plaintiffs do not allow those Musical Works to be

used by everyone who desires a license. The use of Plaintiffs' Musical Works in advertising and marketing without Plaintiffs' permission can have a significant impact on the overall value of those musical works.

30.     Attached as **Schedule A** is an illustrative, non-exhaustive list of sound recordings and musical compositions of which the identified Plaintiff is and/or was at the time of infringement an owner or exclusive licensee in the United States of rights under copyright, which rights have been infringed by Crumbl through Crumbl Videos featuring the sound recording or musical composition posted and maintained by Crumbl on one or more of its owned or operated social media channels. Each listed sound recording and musical composition is registered in the United States Copyright Office.

31.     Plaintiffs' investigation is continuing, and discovery is likely to reveal additional infringements.  Plaintiffs intend to seek leave to amend this Complaint at an appropriate time to provide an expanded list of musical works infringed by Defendants.

## <u>Defendants' Infringing Conduct</u>

32.     Crumbl operates a well-known gourmet cookie business throughout the United States. Crumbl has grown to be one of the largest dessert chains in the country, with over 1,000 owned or franchised stores nationwide. Key to Crumbl's growth and success has been its use of social media platforms to promote its brand and products, most notably on TikTok and Instagram.[2]

---

[2] *See* https://www.tiktok.com/@crumbl; https://www.instagram.com/crumbl/?hl=en.

33.    Crumbl creates and posts its own promotional content on social media. It also partners with "influencers"—third parties to whom Crumbl provides "perks and rewards,"[3] including the prospect of "paid initiatives,"[4] in exchange for promoting Crumbl. By working with popular influencers, Crumbl draws each of these influencers' followers to Crumbl's social media pages and to the Crumbl Videos. Crumbl recruits these individuals—including, upon information and belief, those featured in the Crumbl Videos—to "collaborate" with Crumbl, whereby participants are rewarded for promoting Crumbl products. *See* https://crumblcookies.com/collaborate.  Upon information and belief, Crumbl actively reviews, selects, reproduces and reposts selected influencer videos on Crumbl's own social media pages.

34.    The Crumbl Videos—those produced directly by Crumbl and those produced by influencers and reposted by Crumbl—are distributed to (among others) Crumbl's **9.8 million** TikTok followers and **6.1 million** Instagram followers and are the primary means by which Crumbl promotes its brand and products.

35.    Critically, many of the Crumbl Videos feature sound recordings and/or musical compositions owned or controlled by Plaintiffs (*i.e.*, Plaintiffs' Musical Works), without any authorization for such use. Moreover, the Plaintiffs' Musical Works are integral to these Crumbl Videos. The videos typically depict an individual promoting one or more of Crumbl's products, synchronized to an audio track of a popular sound recording. The audio track generally runs the full length of the Crumbl Videos and includes the most familiar portion of the sound recording

---

[3] *See* https://crumblcookies.com/collaborate.

[4] *See* Isha Patel, *Crumbl's Secret to UGC Success*, LinkedIn (Jan. 26, 2024), available at: https://www.linkedin.com/pulse/crumbls-secret-ugc-success-isha-patel-aiuse (interview with Ashlee Rawlings, Crumbl's then-Influencer Marketing Manager).

and underlying musical composition, such as the hook or chorus. There is typically no speaking or sound other than the copyrighted musical works integrated into the Crumbl Videos.

36.    Furthermore, the Crumbl Videos often incorporate sound recordings and musical compositions that are specifically tied to the Crumbl product being promoted in the video. For example, **Figure 1** below is a screen capture of a Crumbl Video posted to Crumbl's TikTok account promoting Crumbl's blueberry cheesecake and featuring unauthorized use of the WMG musical composition "Blueberry Faygo," performed by Lil Mosey.



**Figure 1**

37.    Similarly, **Figure 2** below is a screen capture of a Crumbl Video posted to Crumbl's TikTok account promoting Crumbl's yellow sugar cookie (while simultaneously advertising for the film *Minions: The Rise of Gru*) and featuring unauthorized use of the WMG sound recording "Yellow," performed by Coldplay.



**Figure 2**

38.     The Crumbl Videos have been critical to Defendants' success, with many garnering hundreds of thousands of "likes" (which in turn are a fraction of the number of views they have received). For example, **Figure 3** below is a screen capture of a Crumbl Video posted to its TikTok account promoting its "KENTUCKY BUTTER CAKE" cookie, which received 367,000 likes. The Crumbl Video features unauthorized use of the WMG musical composition "Butter," performed by BTS (again tying the theme of the Crumbl Video to the copyrighted Musical Work infringed).



**Figure 3**

39.    The Crumbl Videos are also directly created and posted by Crumbl employees or agents. For example, **Figure 4** below is a screen capture of a Crumbl Video posted to Crumbl's TikTok account promoting the brand (including three dancing Crumbl employees and a large image of the Crumbl logo) and featuring unauthorized use of the WMG musical composition "Lottery (Renegade)," performed by K CAMP.



**Figure 4**

40.    Additionally, recognizing the importance of the music to the social media posts, Crumbl has referenced or identified the sound recording and/or musical composition featured in certain Crumbl Videos. For example, **Figure 5** below is a screen capture of a Crumbl Video posted to Crumbl's TikTok account featuring unauthorized use of the WMG sound recording and musical composition "Juice" by Lizzo, one of today's most recognizable artists, and repeating the sound recording's lyrics as part of the video's caption—"mirror mirror on the wall."



**Figure 5**

41.     None of the foregoing uses (nor those listed in **Schedule A**) was authorized by or licensed from Plaintiffs, and Crumbl did not compensate Plaintiffs in any manner for the unauthorized use of Plaintiffs' Musical Works.

42.     Furthermore, in each of the above examples of infringement, the Crumbl Videos falsely represent that the infringing use of Plaintiffs' Musical Works is "original audio." On the contrary, the audio in each of Crumbl Videos consists of one of Plaintiffs' sound recordings or musical compositions, performed by one of the most successful and popular artists in the world.

43.     Upon information and belief, there are many more infringing videos created by Crumbl and its social media influencers, but Plaintiffs have thus far been unable to discover all infringing videos.  Among other things, contrary to FTC guidelines, many of those influencers do not disclose that they are being compensated by Crumbl for the advertisement; moreover, upon information and belief, some of the infringing videos are posted only for a limited period of time.

44.    Social media postings, and in particular the Crumbl Videos, are the primary means by which Defendants advertise. Accordingly, Defendants devote substantial resources to their social media advertising efforts. Upon information and belief, in addition to the rewards that Defendants provide influencers, Defendants' professional staff are directly involved in creating, reproducing, and/or distributing the Crumbl Videos. Upon information and belief, this includes (1) commissioning, reviewing, and selecting videos for use on social media; (2) directly working with and overseeing social media influencers with whom Crumbl partners, including by providing advice and direction as to the content of the promotional videos; (3) specifically encouraging social media influencers to create video content and feature Crumbl products in their videos, including the infringing Crumbl Videos; and (4) actively reviewing influencer-made Crumbl Videos and then promoting and/or redistributing the videos by posting them on Crumbl's own social media pages.

45.    Defendants' investment in social media advertisements, and in the Crumbl Videos in particular, has been critical to Defendants' success.  Indeed, Crumbl co-founder and CEO Jason McGowan has stated, "[Crumbl's] strategy right from the beginning was social media."[5] Moreso, Crumbl's marketing success via social media has been widely praised as vital to the company's fast-paced growth. *See, e.g.*, https://www.digitaltwentyfour.com/news/good-marketing-bad-product-crumbl-cookies/; https://www.brandvm.com/post/the-rise-of-crumbl-cookies; https://beyondfifteen.com/crumbl-cookies-key-ingredients-for-viral-marketing-success/.

---

[5] Julie Jargon, *The $1 Billion Cookie Empire That Teens Love and Parents Hate*, Wall Street Journal (Dec. 12, 2024), available at: https://webview.wsj.com/webview/WP-WSJ-0002262690.

46.     Defendants *have* been wildly successful employing this marketing strategy, garnering millions of followers across social media platforms and, upon information and belief, earning hundreds of millions of dollars in revenues, to the point where Crumbl was recently estimated to have a market value of as much as ***$2 billion***.[6]

47.     However, Defendants achieved that success through blatant, willful, and repeated copyright infringement, including the infringement of at least 159 of Plaintiffs' most popular and valuable sound recordings and musical compositions, including recordings and compositions by some of Plaintiffs' top recording artists and songwriters.  Crumbl derives a direct financial benefit from the highly promotional nature of the infringing videos created by Crumbl and its social media influencers, driven by the unlicensed music in those videos, which encourage consumers to buy Crumbl's products and increase Crumbl's brand awareness and profile.

48.     Moreover, Defendants' infringement was clearly willful.  Among other things, the social media platforms on which Crumbl posted the infringing Crumbl Videos expressly state that users have no right to post music in connection with commercial activities without proper authorization.

49.     For example, the Instagram Terms of Use incorporate "Music Guidelines," which are maintained in the "Legal" section of the website for Instagram's parent company, Meta. Those Music Guidelines expressly provide as follows: "Use of music for commercial or non-

---

[6] *See* Abigail Summerville, *Bakery franchise chain Crumbl explores $2 billion sale, sources say*, Reuters (Jan. 13, 2025), available at: https://www.reuters.com/markets/deals/bakery-franchise-chain-crumbl-explores-2-billion-sale-sources-say-2025-01-13/.

personal purposes in particular is prohibited unless you have obtained appropriate licenses."[7]

And this prohibition is not a recent development. As evidenced on archive.org (the so-called

"Wayback Machine"), this specific prohibition has been incorporated in the Instagram and Meta

Terms of Use since *at least May 2018*.[8]

 50. Similarly, the TikTok Terms of Service unequivocally state that no rights are

granted respecting use of sound recordings and musical compositions:

> NO RIGHTS ARE LICENSED WITH RESPECT TO
> SOUND RECORDINGS AND THE MUSICAL
> WORKS EMBODIED THEREIN THAT ARE MADE
> AVAILABLE FROM OR THROUGH THE SERVICE.[9]

Upon information and belief, Crumbl was aware of these express prohibitions and not only

decided to ignore them, but in some instances uploaded Plaintiffs' Musical Works as "original

sounds" in a deliberate effort to circumvent the prohibitions or to mask the infringing nature of

the Crumbl Videos. By doing so, Crumbl is in effect claiming ownership over Plaintiffs' Musical

Works.

 51. Crumbl's willfulness is further evidenced by the fact that, even after receiving

notice of Plaintiffs' claims by letter, Crumbl failed to either seek out or take down other

infringing Crumbl Videos on Crumbl's social media accounts, and in several instances continued

to post new infringing Crumbl Videos.  On August 3, 2023, WMG sent Crumbl a cease-and-

desist letter concerning Crumbl Videos featuring unauthorized use of Plaintiffs' sound

---

[7] *Terms of Use*, Instagram, http://help.instagram.com/581066165581870 (incorporating Music Guidelines); *Music Guidelines*, Facebook, https://www.facebook.com/legal/music_guidelines.
[8] *See* https://web.archive.org/web/20180517224131/https://www.facebook.com/legal/music_guidelines (Music Guidelines on Meta (f/k/a Facebook) Terms of Use as of May 2018); https://web.archive.org/web/20180522151952/http://help.instagram.com/581066165581870 (Instagram incorporation of and link to Meta Music Guidelines as of May 2018).
[9] *Terms of Service*, TikTok, https://www.tiktok.com/legal/terms-of-service?lang=en.

recordings and musical compositions. Yet, months after receiving the cease-and-desist letter, Crumbl not only continued to exploit many of the infringing Crumbl Videos, but also posted new infringing Crumbl Videos.  As of October 13, 2023, Plaintiffs discovered six additional infringing videos. Moreover, in multiple instances, even after Crumbl received WMG's cease-and-desist letters, the Crumbl Videos remained available on the accounts of Crumbl's social media influencers and partners.

52.     Crumbl's willfulness is further evidenced by its very own statements. **Figure 6** below is a screen capture from a Crumbl Video posted to its TikTok account on January 23, 2024, in which Crumbl itself conceded that "legal said [Crumbl] can't use any trending audios".



**Figure 6**

53.     Crumbl is not unfamiliar with intellectual property laws and enforces its own intellectual property rights by filing lawsuits against companies that allegedly infringe Crumbl's

intellectual property. *See, e.g., Crumbl LLC v. Dirty Dough LLC*, No. 2:22-CV-318-HCN (D. Utah); *Crumbl LLC v. Crave Cookies, LLC*, No. 2:22-cv-00319-TC (D. Utah). Upon information and belief, Crumbl has earned hundreds of millions of dollars in revenue and has no shortage of legal resources.

54.    Courts specifically have held that the same type of conduct engaged in by Crumbl constitutes copyright infringement.  On July 11, 2022, United States District Judge William P. Dimitrouleas granted partial summary judgment to another music company, Universal Music Group, in its action against Bang Energy.[10]  In its order, the court found that it was "undisputed that [Bang Energy] posted approximately 140 TikTok videos utilizing portions of [Universal Music Group's] copyrighted works," and concluded that the Bang defendants were liable for direct copyright infringement as a matter of law.[11]  Similarly, on September 14, 2022, Judge Dimitrouleas granted partial summary judgment to another music company, Sony Music Entertainment, in its separate action against Bang Energy, concluding that the Bang defendants were liable for both direct and vicarious copyright infringement as a matter of law.[12]

## FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

55.    Plaintiffs incorporate paragraphs 1 through 54 of this Complaint as if fully set forth herein.

---

[10] *UMG Recs.*, 2022 WL 2670339, at *7.

[11] *Id.* at * 7.

[12] *Sony*, 2022 WL 4771858, at *7-13.

56. Plaintiffs are the owners or exclusive licensees in the United States of rights under copyright of the works identified in **Schedule A**, as reflected in that schedule, which copyrights are valid and subsisting.

57. Defendants' creation, posting/reposting, and/or streaming of the Crumbl Videos infringe Plaintiffs' copyrights. Among other things, Defendants have unlawfully reproduced, prepared derivative works from, distributed, publicly performed, and/or publicly performed by means of a digital audio transmission, the copyrighted works listed in **Schedule A** without authorization, in violation of 17 U.S.C. § 106(1), (2), (3), (4), and/or (6).

58. Defendants' acts of infringement have been knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

59. Defendants are liable for direct copyright infringement. *See Sony*, 2022 WL 4771858, at *8 ("it is undisputed that Defendants directly posted approximately 286 social media videos utilizing portions of Plaintiffs' copyrighted works [without authorization] . . . Courts have found that the unauthorized reproduction, distribution and public performance of sound recordings via the internet violates the Copyright Act . . . Both elements of a direct copyright infringement claim having been established based upon the undisputed material facts . . . Plaintiffs are entitled to partial summary judgment against Defendants").

60. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to actual damages and Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are

entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

61.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

62.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright.

**SECOND CLAIM FOR RELIEF**
**(Contributory Copyright Infringement)**

63.     Plaintiffs incorporate paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64.     As detailed above, the third-party social media influencers who created and distributed the Crumbl Videos have likewise infringed Plaintiffs' copyrights. Defendants are liable as contributory copyright infringers for the infringing acts of these influencers. Additionally, or alternatively, Defendants are liable as contributory copyright infringers by making the Crumbl Videos available to the users and subscribers of the social media platforms referenced above.

65.     Upon information and belief, Defendants have knowledge of influencers' infringing activity (or have reason to know or are willfully blind to such infringing activity). Among other things, Crumbl's influencers generally tag Crumbl's corporate accounts; upon

information and belief, Crumbl receives a notification from the relevant platform each time it is tagged and reviews posts that tag Crumbl's accounts. As set forth above, Defendants had actual or constructive knowledge that the influencers' and Defendants' use of Plaintiffs' Musical Works in Crumbl Videos was not licensed or otherwise authorized, and was infringing.

66.    In addition, by promoting and/or assisting with the creation of the infringing Crumbl Videos, including without limitation through its "perks and rewards" program, and/or by causing them to be copied, made available, and transmitted over the social media platforms referenced above, Defendants materially contributed to the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the copyrighted works contained in the Crumbl Videos, including but not limited to the musical works listed in **Schedule A**.

67.    In addition, Defendants have induced such infringement, including by promoting such infringement through perks and rewards to social media collaborators and influencers, posting and/or reposting the infringing Crumbl Videos, and specifically referring to the sound recordings and musical compositions used in the infringing Crumbl Videos.

68.    Defendants' acts of contributory infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

69.    As a direct and proximate result of Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000

with respect to each musical work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

70.      Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

71.      Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## THIRD CLAIM FOR RELIEF
### (Vicarious Copyright Infringement)

72.      Plaintiffs incorporate paragraphs 1 through 71  of this Complaint as if fully set forth herein.

73.      As detailed above, third-party social media influencers who created and distributed the Crumbl Videos have likewise infringed Plaintiffs' copyrights, and Defendants are vicariously liable for the infringing acts of these influencers.  Additionally, or alternatively, Defendants are liable as vicarious copyright infringers by making the Crumbl Videos available to the users and subscribers of the social media platforms referenced above.

74.      Defendants have exercised the right, ability, and authority to control and supervise the placement of the infringing Crumbl Videos on the social media platforms referenced above.  Defendants also have the ability to remove the infringing Crumbl Videos from each platform.  Moreover, upon information and belief, Defendants maintain the right and

ability to control their influencers' infringement, as they are able (but have failed) to place conditions on provision of commissions or other consideration to influencers, such as compliance with copyright laws, or to penalize influencers or terminate relationships with influencers who infringe.

75.    Defendants receive a direct financial benefit from the infringing reproduction, preparation of derivative works, distribution, and/or public performance of the copyrighted works contained in the Crumbl Videos, including but not limited to the musical works listed in **Schedule A**, including (among other financial benefits) increased brand recognition and product sales.

76.    Defendants' acts of vicarious infringement are knowing, deliberate, willful, and in utter disregard for Plaintiffs' rights.

77.    Thus, because Defendants had the ability to control, supervise, and remove the infringing Crumbl Videos posted by third parties, and they received a direct financial benefit from the distribution and/or public performance of the copyrighted works contained in the infringing Crumbl Videos, Defendants are liable for vicarious copyright infringement.

78.    As a direct and proximate result of Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each musical work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

79.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

80.     Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.  for a permanent injunction requiring that Defendants, and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them, cease infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created;

2.  for statutory damages pursuant to 17 U.S.C. § 504(c), up to the maximum amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c), or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs' actual damages and Defendants' profits from infringement, in amounts to be proven at trial;

3.  for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and otherwise;

4.  for prejudgment and post-judgment interest; and

5.  for such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs request a trial by jury for all issues so triable pursuant to Fed. R. Civ. P. 38(b) and 38(c) and under the United States Constitution.

DATED this 22nd day of April, 2025.

WORKMAN NYDEGGER

By:  /s/ *Ryan C. Morris*
     Ryan C. Morris

SIDLEY AUSTIN LLP

Rollin Ransom (*pro hac vice* to be filed)
James Joseph Cappell (*pro hac vice* to be filed)

*Attorneys for Plaintiffs*